No. 29,728.

JAMES E. ELY, *Appellant,* v. JAMES RILEY, *Appellee.*

(295 Pac. 637.)

Opinion filed February 7, 1931.

*Fred J. Evans,* of Garden City, for the appellant.

*H. O. Trinkle,* of Garden City, and *C. K. Carey,* of Stafford, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff seeks to compel the specific performance of a written instrument providing for the sale of real property. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The writing was as follows:

"This is to certify that I hereby authorize James E. Ely to sell and execute contract on my behalf or buy the following-described real estate upon the terms and conditions mentioned below. Description: NE¼ of section 30, and SW¼ of section 29, all in Tp. 21, R. 32, Finney county, Kansas.

"Price, terms and conditions of sale: Price is $5,000 net to the owner, of which $1,250 is to be cash at time of exchanging deed, then $500 in three years, $500 in 4 years, $500 in 5 years, $500 in 6 years, and $1,750 in 7 years—all this from time of exchanging deed at 6 per cent annual interest from then. Deferred payments to be secured by first mortgage against the land. Privilege given buyer to pay all or part of mortgage ahead of time.

"I hereby authorize James E. Ely to receive not less than $100 dollars as forfeit money on the deal as liquidated damages and to give not longer than ninety days' time as date of closing.

"I agree to furnish upon demand a G. W. deed and abstract showing good title to the above-mentioned property.

"I reserve the right to sell this land myself, to have others sell it for me, to change the price on the same, or withdraw the same from market by giving ninety days' written notice by registered mail.

"Witness my hand and seal this 11th day of May, 1927.

(Seal)            JAMES RILEY."

The plaintiff did not sign the writing.

On September 26 the defendant wrote the plaintiff as follows:

"Mr. Ely Havent herd from you i (in) regard to rent on my land Am I to (get) eney rent off of it or is it rented for the next crop I do not want to sell the land for less than twenty an aker If you can not get that I will keep it I was offered twenty in trade it would put me in debt I did not want to go in debt."

That letter was received by the plaintiff September 27. On that day he wrote the defendant as follows:

"Just received your letter of 9/26 . . . We note what you say about taking this land off the market. In reply say according to the written contract and option which I have from you that I still have 90 days after you give me notice in which to secure or buy the land. I therefore still have 90 days to sell or buy this so you will please act accordingly.

"Appreciation.            ELY."

The controversy as presented by the plaintiff's brief revolves around the following language contained in the written instrument:

"I reserve the right to sell this land myself, to have others sell it for me, to change the price on the same, or withdraw the same from market by giving ninety days' written notice by registered mail."

The plaintiff argues that the defendant must give ninety days' written notice by registered mail before he can change the price to be received by him for the land sold. The defendant argues that the ninety days' written notice refers only to his right to withdraw the land from market.

It should be noticed that this is an action by the plaintiff to compel specific performance of contract for the sale of land by the defendant to the plaintiff. The writing amounts to an offer on the part of the defendant to sell the land on certain conditions to the plaintiff, but nowhere in the written instrument does the plaintiff agree to purchase the land according to the terms of that instrument. The defendant was not notified by the plaintiff that he would buy the property until October 15, 1929, nineteen days after the plaintiff had been notified by the defendant that he would not sell the land for less than twenty dollars an acre. Under the written instrument the defendant had the right to withdraw his offer to sell the land to the plaintiff at any time before the plaintiff had signified his intention to buy it.

The defendant reserved the right to sell the land himself. When could he sell it? After giving ninety days' notice to the plaintiff, or at any time? The only reasonable interpretation to be placed on that language is that the defendant reserved the right to sell the land at any time after the written instrument was signed. The defendant's reservation to have others sell the land for him was under exactly the same condition. The reservation to change the price on the land would be useless to the defendant if, after giving notice that he had changed the price on the land, he must wait ninety days for that notice to go into effect. The unreasonableness of a contrary interpretation is apparent when it is considered that the plaintiff is seeking to enforce a contract for the purchase of the land when the plaintiff had not made known his intention to purchase it until after the defendant had increased the price. The following is taken from the judgment of the trial court:

"And the court construes that said provision authorized the defendant to change the price on his land without giving the said plaintiff ninety days'

notice of such change in price in writing, and that the notice given as set forth in said answer was sufficient notice of such change in price, and that defendant was not thereafter bound to sell and convey said premises to the plaintiff . . . at a less price."

That was the proper construction of the reservation in the written instrument.

The judgment is affirmed.